UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH DAMUS, | Civil Action No. 16-933 (JLL) |
| Petitioner, | |
| v. | OPINION |
| JOHN TSOUKARIS, et al., | |
| Respondents. | |

**LINARES**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Ralph Damus, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer (ECF No. 2), the Government filed a response to the Petition (ECF No. 3), to which Petitioner has replied (ECF Nos. 4-5). For the following reasons, this Court will deny the petition without prejudice.

## I. BACKGROUND

Petitioner, Ralph Damus, is a native and citizen of Haiti who entered this country and was granted lawful permanent resident status in 2000. (Document 1 attached to ECF No. 3 at ¶ 4). In July 2008, Petitioner was convicted of distribution of a controlled dangerous substance in the Superior Court of New Jersey in Warren County. (*Id.* at ¶ 5). For this conviction, Petitioner received a sentence of 364 days' imprisonment and two years' probation. (*Id.*). On November 24, 2013, Petitioner returned to this country from a trip abroad, arriving at JFK Airport in New York. (*Id.* at ¶ 6). Because Petitioner had previously been convicted of a drug crime, the immigration officer who oversaw Petitioner's attempted entry into the country determined that he was inadmissible under immigration law and issued Petitioner a notice to appear and paroled him into

1

the United States. (*Id.*). Petitioner's initial notice to appear was apparently cancelled, and he was not removed at that time, though the reason for this is unclear. (*Id.*).

On August 6, 2015, immigration officials were made aware that he had been taken into custody on state law charges and was incarcerated at the Essex County Jail. (*Id.* at ¶ 7). Immigration officials therefore placed a detainer upon him, and Petitioner was ultimately taken into immigration custody on August 10, 2015, at which point he was given another notice to appear stating that he was an applicant for admission who was inadmissible based on his past drug conviction. (*Id.* at ¶ 3, 7-8; Document 5 attached to ECF No. 3). Petitioner has remained in immigration detention since that time. (Document 1 attached to ECF No. 3 at ¶ 9-14). Although Petitioner has requested bond in the past, an immigration judge denied that request for lack of jurisdiction on October 28, 2015. (*Id.* at ¶ 11). Based on the information currently available to the Court, it appears that Petitioner remains in removal proceedings and is not yet subject to a final order of removal.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within this Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his

claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

**1. The Statutory Basis for Petitioner's Detention**

In his habeas petition, Petitioner contends that he is being held pursuant to 8 U.S.C. § 1226(c) as an alien removable based on his criminal history, and is therefore entitled to a bond hearing as his detention has continued for nearly a year pursuant to *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). The Government, however, contends that Petitioner is instead being held as an arriving alien who is inadmissible based on a prior conviction, and is therefore being held pursuant to 8 U.S.C. § 1225(b)(2)(A). As Petitioner's entitlement to relief depends on the basis for his detention, this Court must first determine the basis for his detention before evaluating Petitioner's entitlement to relief.

As courts in this district have previously observed, a lawful permanent resident returning from abroad is "presumptively entitled to retain that status upon reentry unless he falls into one of six subsections, in which case 'he is stripped of his . . . status [and] becomes an alien seeking admission as if he were entering for the first time.'" *Mejia v. Ashcroft*, 360 F. Supp. 2d 647, 651 (D.N.J. 2005) (quoting *Tineo v. Ashcroft*, 350 F.3d 382, 386 (3d Cir. 2003)). One of those six subsections explicitly states that a returning alien with prior convictions for controlled substance offenses falls into the exception and is therefore treated as an applicant for admission upon his attempt at reentry into this country. *See* 8 U.S.C. §§ 1101(a)(13)(C); *see also* 8 U.S.C. § 1182(a)(2)(A)(i)(II). Where an alien is so stripped of his status as an LPR and is deemed an

3

applicant for admission, he is subject to detention under 8 U.S.C. § 1225(b)(2)(A). Under that statute, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings]." 8 U.S.C. § 1225(b)(2)(A). Here, in both notices to appear which Petitioner has received, he has been categorized as an alien seeking admission based upon his prior drug offense stripping him of LPR status. He continues to be categorized as an alien seeking admission, rather than a criminal alien detained after entry into this country, and as such his detention arises out of 8 U.S.C. § 1225(b)(2)(A) rather than § 1226(c). *See Tineo*, 350 F.3d at 396-99 (observing that § 1225(b)(2)(A) applies to returning aliens stripped of LPR status and requires their detention during removal proceedings absent certain exceptions). As it fully appears that Petitioner is detained under § 1225(b)(2)(A) rather than § 1226(c), *Diop* and *Chavez-Alvarez* are not expressly applicable to his claims, and this Court must look elsewhere to determine the merit of Petitioner's contention that he is entitled to relief from detention.

### 2. Petitioner's Due Process Claim

Petitioner's central assertion in his habeas petition is that his current detention has exceeded a reasonable period and therefore violates due process and that he is entitled to release or a bond hearing as a result. Before reaching the merits of that claim, the Court must first address Petitioner's entitlement to relief under the statute and the extent to which Petitioner possesses Due Process rights as an applicant for admission rather than an alien who is considered present within the United States. As Courts in this District and the Third Circuit have observed, § 1225(b)(2)(A) require that applicants for admission be held pending their removal proceedings. *Tineo*, 350 F.3d at 387; *Meija*, 360 F. Supp. 2d at 651. This detention is essentially mandatory. *Id.*; *see also* 8

C.F.R. § 235.3(b)(2)(iii). While aliens detained under § 1225(b)(2)(A) are not entitled to a bond hearing in the ordinary course under the statute and applicable regulations, *see, e.g.,* 8 C.F.R. § 1003.19(h)(2)(i)(B), the statute does permit the Attorney General, through the Department of Homeland Security, to parole such aliens into the United States if the Department determines "on a case-by-case basis" that "urgent humanitarian reasons or significant public benefit" so warrant. *See* 8 U.S.C. § 1182(d)(5)(A). The statute also provides, however, that "such parole . . . shall not be regarded as an admission of the alien and when the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* It is because these standards for relief are both highly discretionary and stringent that the Third Circuit has held that detention under § 1225(b)(2)(A) is in most cases mandatory in all important respects. *Tineo*, 350 F.3d at 387; *see also Meija*, 360 F. Supp. 2d at 651. It is thus clear that Petitioner, in so much as immigration officials have essentially revoked his parole into the United States, is not entitled to release or a bond hearing under the statute itself, and could only receive such relief if it were compelled by the Constitution.

To the extent that Petitioner asserts a constitutional claim for relief, such a claim would be affected by his status as an applicant for admission rather than an alien who has previously entered the country. *See, e.g., Maldonado v. Macias*, 150 F. Supp. 3d 788, 798-800 (W.D. Tex. 2015). Petitioner's status as an applicant for admission affects his right to Due Process because applicants for admission are subject to the "entry fiction" which provides that, for legal and constitutional purposes, an alien stopped at the border is considered to remain at the border even if he is paroled into the country, and is treated as such for the purpose of determining his rights to relief. *Id.*; *see also see also Kay v. Reno*, 94 F. Supp. 2d 546, 554 (M.D. Pa. 2000) (describing the "entry fiction").

The distinction is not one without a difference, as the Supreme Court in *Zadvydas* observed that it "is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," and that "once an alien [for legal purposes] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." 533 U.S. at 693. The Court has likewise suggested that even for those aliens found within the United States, "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish [the removal of those aliens]." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Indeed, "the Supreme Court has made clear that inadmissible aliens are entitled to less due process than are resident aliens." *Maldonado*, 150 F. Supp. 3d at 799 (citing *Demore*, 538 U.S. at 547 (O'Connor, J., concurring)). Indeed, as *Zadvydas* explained, an alien's treatment "as if stopped at the border" has historically been held sufficient to justify lengthy and seemingly interminable detention. 533 U.S. at 692-93 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). By all appearances, then, Petitioner, as an alien deemed an applicant for admission who is legally treated as if stopped at the border is entitled to something less than the full panoply of rights usually conferred by the Due Process Clause. *Cf. Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) (holding that at least the substantive portion of the Due Process Clause must apply to even those aliens at the border as to hold otherwise would permit the Government to "torture or summarily execute them" which would amount to an absurd proposition).

Thus, although Petitioner is likely not entitled to all the rights Due Process would provide an alien considered within this country, he has at least some entitlement to proper procedures. The question that arises, then, is whether mandatory detention *ad infinitum* comports with that

entitlement. On this issue, however, neither the Supreme Court nor the Third Circuit has provided clear guidance. While the Third Circuit has not provided this Court with guidance as to whether indefinite detention under § 1225(b)(2)(A) comports with the Constitution, the Court has addressed a similar statutory provision in the form of § 1226(c). Like § 1225(b)(2)(A), § 1226(c) expressly provides that the Government shall take into custody those removable aliens who have been convicted of certain classes of offenses, and does not provide for a bond hearing once those aliens have been so detained. In *Diop*, however, the Third Circuit held that detention subject to § 1226(c) was subject to a reasonable time limitation as to interpret the statute to permit indefinite detention would run the risk of running afoul of the Due Process Clause. 656 F.3d at 231-32. Thus, as a matter of statutory interpretation and constitutional avoidance, the Third Circuit held that § 1226(c) authorized mandatory detention for only a reasonable period of time, after which the Government would be required to justify the alien's continued detention at an individualized bond hearing. *Id.* at 231-34.

Thus, the Third Circuit held in *Diop* that the federal courts, in determining whether an alien subject to mandatory detention under § 1226(c) was entitled to a bond hearing, must determine whether the length of his detention was "reasonable," which is a "function of whether it is necessary to fulfill the purpose of the statute." *Id.* at 234. Such a determination is a fact specific inquiry "requiring an assessment of all of the circumstances of a given case." *Id.* While the Court in *Diop* did not provide specific guidance as to the length of time which would cast doubt on the reasonableness of a given alien's detention, *see* 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Third Circuit provided further guidance in *Chavez-Alvarez*. In *Chavez-Alvarez*, the Third Circuit clarified that, at least where no evidence of bad faith on the part of the petitioner has been presented, "beginning sometime after the six-

month timeframe [upheld by the Supreme Court in] *Demore*, and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478.

Given this case law in regards to aliens present within this country subject to mandatory detention, the question here becomes whether the lesser amount of Due Process to which unadmitted aliens subject to the entry fiction are entitled requires that 1225(b)(2)(A) be interpreted to include a similar reasonableness limitation. Several Courts have held that the distinction between removable aliens present within this country and those not yet admitted and legally at the border is insufficient to warrant a difference in treatment, and that § 1225(b)(2)(A) is subject to a reasonable time limitation as a result. *See, e.g., Maldonado*, 150 F. Supp. 3d at 804-812; *Bautista v. Sabol*, 862 F. Supp. 2d 375, 377 (M.D. Pa. 2012); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1081-84 (9th Cir. 2015) (holding that aliens detained under §§ 1226(a), 1226(c), 1225(b)(2)(A), and 1231(a) are all entitled to a bond hearing after six months as all of those statutory provisions are subject to reasonable time limitations), *cert. granted sub nom., Jennings v. Rodriguez*, --- S. Ct. ---, 2016 WL 1182403 (June 20, 2016). Other Courts have instead held that inadmissible aliens are treated differently from those subject to removal already present within this country, and therefore are not entitled to release on bond during the pendency of their removal proceedings. *See, e.g., Perez v. Aviles*, --- F. Supp. 3d ---, ---, 2016 WL 3017399, at * 3 (S.D.N.Y. 2016); *see also See Cardona v. Nalls–Castillo*, --- F.Supp.3d ---, ---, 2016 WL 1553430, at *1 (S.D.N.Y. Apr. 14, 2016); *Salim v. Tryon*, No. 13-6659, 2014 WL 1664413, at *2 (W.D.N.Y. Apr. 25, 2014) (LPR was lawfully detained during removal proceedings under § 1225(b)(2)(A)); *Ferreras v. Ashcroft*, 160 F.Supp.2d 617, 622–27 (S.D.N.Y. 2001) (holding the same for LPR detained for over 15

8

months); *Viknesrajah v. Koson*, No. 09-6442, 2011 WL 147901, at *5–6 (W.D.N.Y. Jan. 18, 2011) (holding § 1225(b) authorized continued detention of alien in custody for over two years during pendency of removal proceedings); *but see Arias v. Aviles*, No. 15-9249, 2016 WL 3906738, at *3 (S.D.N.Y. July 14, 2016) (disagreeing with *Perez* and holding that § 1225(b)(2)(A) is subject to a reasonable time limitation).

Having weighed the lesser Due Process rights to which applicants for admission are entitled with the grave specter of interminable detention, this Court must conclude that the former class of cases better encapsulate the state of the law and that an alien's detention subject to § 1225(b)(2)(A) is subject to the limitation that his detention may continue only for a reasonable time at which point his continued detention would need to be warranted by more than a presumption based on his status as an applicant for admission alone. In so concluding, however, this Court does not agree with the Ninth Circuit's conclusion that the distinction between an alien detained pending removal who is already in this country and one who remains legally at the border as an applicant for admission is without difference. The level of Due Process protections to which the two classes are entitled is not equal, and any remedy fashioned for applicants for admission would have to uphold and continue the entry fiction even if those aliens were released on bond or under an order of supervision. The Court also notes that there are distinctions between § 1225 and § 1226 which also must be taken into account in fashioning a remedy – specifically, under § 1226, for removable aliens present in this country, detention subject to bond is the default rule and mandatory detention the exception, whereas § 1225 essentially sets nigh mandatory detention as the default rule with parole for humanitarian reasons the exception.

In this case, however, the Court need not address these issues because this Court concludes that the length of Petitioner's detention has not yet reached a length of time wherein it has become

9

unreasonable. While this Court agrees that § 1225(b)(2)(A) must be subject to a reasonable time limitation, what is reasonable under § 1225(b)(2)(A) for an applicant for admission not entitled to the greater protections provided to an alien already present in this country may well be unreasonable for those aliens detained under § 1226(c). Essentially, the distinction in the level of protections between the two classes of aliens is one of magnitude rather than entitlement to relief – an alien who is legally considered to remain at the border has no right of entry into this country and is entitled to lesser protections than one who has already entered, and as such he may be held for a greater length of time before his continued detention raises Due Process concerns. While it is unclear at what point in time such concerns would rise to the level of requiring redress, this Court concludes that Petitioner's current detention – for just under a year – does not appear to be unreasonable given the purposes of § 1225 that such detention serves – preventing the entry of an inadmissible alien into this country. It thus appears that detention of nearly a year would certainly be more reasonable under § 1225(b)(2)(A) than that which is reasonable under § 1226(c), given the lesser level of Due Process to which aliens subject to the entry fiction are entitled. Thus, this Court declines to extend *Chavez-Alvarez*'s holding that, absent bad faith, a § 1226(c) detainee's detention becomes unreasonable at some point less than a year to inadmissible aliens held pursuant to § 1225(b)(2)(A), and instead concludes that, at this time, Petitioner's detention has yet to become unreasonable, and that he is therefore not entitled to relief. This Court will therefore deny his habeas petition without prejudice to Petitioner's filing another petition in the event that the length of his detention becomes unreasonable.

**III. CONCLUSION**

For the reasons stated above, this Court will deny Petitioner's habeas petition without prejudice to the filing of another petition should the length of Petitioner's detention become unreasonable. An appropriate order follows.

IT IS SO ORDERED.

DATED: August 8th, 2016

Hon. Jose L. Linares,
United States District Judge